·CEDAR RAPIDS & MARION CITY RAILWAY COMPANY, Appellant,
    v. JOHN M. REDMOND, Mayor of the City of Cedar
    Rapids, Iowa, *et al.*

Taxation: INCREASE OF ASSESSMENTS: NOTICE: WAIVER. The
    provision of an ordinance of a special charter city that before
    the board of equalization can increase an assessment a notice
    containing an alphabetical list of the owners of the property
    and its assessed valuation shall be posted at the door of the
    collector's office, must be strictly complied with before an
    assessment can be legally increased; and the fact that a tax-
    payer may know of the proposed increase and appears before
    the board of equalization for the purpose of explaining his
    assessment, and to protest against the action of a committee
    recommending an increase, will not constitute a waiver of the
    posted notice required by the ordinance.

*Appeal from Linn District Court.*—HON. W. N. TREICHLER,
                        Judge.·

SATURDAY, MAY 23, 1903.

IN the lower court plaintiff asked a writ of *certiorari*
to inquire into the legality of the action of the mayor and
·city council of the city of Cedar Rapids, acting as a board
of review for the equalization of assessments for taxation
in said city, in raising plaintiff's assessment, without
proper notice thereof.   After a hearing on the merits, the
lower court held the action of defendants to be valid, and
dismissed plaintiff's petition. Plaintiff appeals. —*Reversed.*

*Chas. A. Clark & Son* and *William G. Clark* for
appellant.

*John N. Hughes* for appellees.

McCLAIN, J.—In the year 1900 the assessor of the city
of Cedar Rapids, which is a city under special charter,

returned an assessment of plaintiff's realty at $48,000 and.
personalty at $24,740.  In Code, section 1010, cities under
special charter are given power to provide by ordinance for
the equalization of assessments, and under this power the
city of Cedar Rapids had provided by ordinance that after
the return of the assessment and the making of the levy
based thereon the collector of taxes shall publish a notice of
assessment and levy in general terms, and shall give notice
that the city council will hear any complaints in regard to
the assessment at any meeting within thirty days from the
date of the first publication; and, further, "the city coun-
cil, sitting as a board of equalization, shall at each meet-
ing within the thirty days therein provided make such
further changes and corrections in the assessments as are
necessary to make them just and equitable; provided, that
before the assessed valuation of any property is increased,
an alphabetical list of the names of the owners (when
known) of property, the assessed valuation of which it is
the purpose to increase, shall be posted at the door of the
collector's office, and said notice shall give the date of a
regular or special meeting of the council for the final
action thereon, which meeting shall be held not less than
seven days from the date of posting notice of such meet-
ing.  At the first regular or special meeting of the city
council after the expiration of thirty days from the date
of the first publication of notice by the collector of the
assessment and levy, the city council shall approve the
assessment as changed and the levy as theretofore made.'"
    It is evident that by these provisions of the ordinance
a procedure similar to that provided for by statute in the
case of cities not acting under special charter is contem-
plated.  See Code, sections 1370-1372.  The general notice
of the assessment and levy is sufficient to give property
owners an opportunity to appear before the board of
equalization and make complaint as to the correctness of
the returns made by the assessor.  But, if the board of

equalization proposes to raise the assessment returned by the assessor, then the property owners must have special notice of such purpose which is given to him by posting at the door of the collector's office of an alphabetical list of the names of the owners of property, the assessed valuation of which the board proposes to increase. The record in this case shows that the general notice by the collector was given, but that no alphabetical list containing the name of plantiff, or advising it of any purpose to increase the assessed valuation of its property, was posted. Notwithstanding such failure to post notice, the board of equalization, on the 13th day of November, proceeded by resolution to raise the valuation of plaintiff's real estate, including its street car line, track, and overhead line, to $65,000, and the valuation of its personal property to $30,000, and this increased valuation was made the basis not only for city taxation, but for taxation by the county and state. One of the contentions for appellant is that this increase of assessed valuation, being made without the notice required by the ordinance, is void, and the conclusion which we reach on this question will dispose of the case.

Counsel for appellant contend that plaintiff had actual notice of the purpose to increase the assessed valuation of its property such as to render the posting of notice unnecessary, and in support of this contention they rely upon certain proceedings before a so-called "advisory committee" provided for by the ordinances of the city, which is to be appointed during the month of April of each year by the council, and to consist of three persons, not members of such council. This committee is required to meet after the publication of notice of assessment and "examine the assessment of all real and personal property, and report to the council such changes, additions, and corrections as will, in their judgment, make the assessment fair, just and equitable to all property owners, and such report shall be merely advisory to the city coun-

cil." It is further provided that "any person shall have the right to be heard before the committee at any time during its session, and any property owner aggrieved by any recommendation of the committee or by the assessment of any property as made by the assessor, shall have the right to make complaint to the city council in writing, and such right shall not be affected by the failure to appear before the advisory committee." It appears that this advisory committee in July adopted a report in which it is recommended that the total assessment of plaintiff's prop erty be increased from $72,740, as reported by the assessor, to $150,000, and by way of explanation of this increase the following statement is made in the report: "We find the assessment of the street railway as given above, and there is a note in lead pencil on the assessor's book 'less railway,' which we take to mean he has not assessed track, tools, or wires in the city, under an apprehension that the same is assessed by the executive board of the state, which we are informed is wrong, and which leaves the assessment evidently so unfair that we recommend the above assessment."

On September 14, 1900, the plaintiff, by its president, presented a communication to the city council, sitting as a board of equalization, in which it is set forth that the assessment entered against plaintiff on the assessment roll on "lots four (4) and five (5) in fractional block one (1), and lots three (3), four (4), and five (5) in block nineteen (19) (less railway)," at the actual value of forty-eight thousand dollars ($48,000), is erroneous, and does not correspond with the assessment as actually made by the assessor, which specifically includes as a part of the real estate "nine and thirty-one hundredths miles street car line track and overhead line, less railway," and that the words "less railway," inserted by the assessor in pencil, did not indicate an exception from the assessment of the street car line, track, and overhead line, but an exception

of the value of the right of way of the Chicago & North-western Railway Company where it crosses the street car line. The statements as made in this communication are supported by a communication from the assessor to the city council containing the same explanation.

On this showing the plaintiff asked in this application that its assessment be corrected on the assessment roll so as to show that the assessment of real property, as returned by the assessor, included plaintiff's street car line, track, and overhead line, and excluded the Chicago & North-western Railway Company's right of way. The city council changed the assessment roll so as to show the inclusion of the street car line, track, and overhead line, but raised the assessment of plaintiff's property, as already stated. The claim of counsel that this action of plaintiff obviated the necessity for posting of notice of a purpose to increase its assessment is not well founded. The action of the committee was advisory only, and the council could determine as it saw fit whether to act thereon or not. Plaintiff's communication indicated reasons to the council why the recommendation was erroneous, and the result of a misunderstanding of the assessment, and the plaintiff had a right to assume that if the council, in view of the recommendation of the committee and the explanatory communications of its president and the city assessor, proposed to raise the plaintiff's assessment, the posted notice of such purpose would be given, as required by the ordinance. The action of the advisory committee in recommending the raising of the assessment was not equivalent to nor a substitute for a determination by the city council to increase such assessment, of which determination the plaintiff had a right to have notice. The council acted without authority in increasing the assessment without such notice, and the trial court should have held the increased assessment to be valid.—REVERSED.